# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PAUL GERMAIN-CUMMINGS, on behalf of himself and others similarly situated, | CIVIL ACTION FILE NO. 4:22-cv-40036 |
| Plaintiff, | |
| v. | **COMPLAINT – CLASS ACTION** |
| LIBERTY UNIVERSITY, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## JOINT STATEMENT

Plaintiff Paul Germain-Cummings ("Plaintiff") and Defendant Liberty University, Inc. ("Defendant" or "Liberty") (together with Plaintiff, the "Parties"), through their undersigned counsel, submit this Report pursuant to Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure and Local Rule 16.1.

## I. FED. R. CIV. P. 26(F) REPORT

### A. Nature and Basis of Claims

1. Plaintiff's Statement

Plaintiff has brought this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, *LLC*, 132 S. Ct. 740, 745 (2012). Mr. Germain-Cummings has alleged that Liberty University marketed its programs through the use of pre-recorded telemarketing calls in plain violation of the TCPA. Plaintiff seeks to represent a class of similarly situated individuals who were sent similar telemarketing calls from, or on behalf of, Liberty University. The Plaintiff's putative class period

1

is for any calls that were sent within four years prior to the filing of the Complaint through the date of class certification.

This is a textbook TCPA class action. Plaintiff Germain-Cummings is not alone in his receipt of unwanted calls from Liberty. Other consumers have publicly complained about Liberty's unwanted and illegal call campaigns. *See* Complaint ¶¶ 22. In fact, Liberty has previously been sued for similar TCPA violations; namely pre-recorded telemarketing campaigns directed at prospective students. See, *Elleby v. Liberty University, Inc.,* Case No. 5:21-cv-00093-KDB-DCK (W.D.N.C). More than six months before he filed his Complaint, Plaintiff Germain-Cummings put Liberty on notice of his receipt of illegal telemarketing calls by filing a complaint with the Massachusetts Attorney General. Consistent with the allegations in the Complaint, Plaintiff Germain-Cummings informed the Massachusetts Attorney General that he was receiving unwanted telemarketing calls from Liberty. He further explained that when he called back the telephone number that called him, (866) 834-0571, he was connected to a Liberty University representative. In order to further assist Liberty with its investigation into Plaintiff's claims, Plaintiff has provided Liberty with an excerpt of his cellular telephone records that reflect the pre-recorded calls he received the from Liberty.

2. Defendant's Statement

This is a TCPA case in search of a proper defendant. Liberty makes certain types of outbound calls to prospective students, all based on proper consent, and keeps good records of its prospective-student communications. It has <u>no record</u> of ever calling Plaintiff's phone number, and <u>no record</u> of Plaintiff's existence before receiving notice of his legal claim here. *See* Defendant's Answer to Plaintiff's Complaint ¶¶ 16, Third Affirmative Defense. Moreover, various circumstances about the calls Plaintiff describes in his Complaint are inconsistent with the types of

calls Liberty *does* make, and Liberty does not engage third parties to conduct any type of outbound calling campaign of the type Plaintiff describes. Plaintiff recently provided Liberty with information concerning one call he believes Liberty made to him. Liberty investigated that call and confirmed it has no record of making it, and, indeed, that it came from a phone number that Liberty simply does not use for outbound caller ID, such that the only reasonable assumption is that the call was "spoofed" by a third party. As such, before the parties—and overwhelmingly Liberty—waste considerable time and resources into four years' worth of phone calls that Liberty actually does make, but did not make to Plaintiff, the parties should first confine their discovery to the threshold question of whether there is any basis in fact for Plaintiff's allegation that Liberty—as opposed to some other party—called Plaintiff.

**B. Possibilities of Settling or Resolving the Case**

Pursuant to Local Rule 16(c) Plaintiff made a settlement demand to Defendant on June 22, 2022. Plaintiff is open to mediating a resolution to this matter on a class-wide basis.

Liberty responded to Plaintiff's settlement demand on July 7, 2022. Liberty is open to mediating a resolution only as to Plaintiff's individual claim, which Plaintiff should dismiss.

**C. Proposed Discovery Plan**

**Plaintiff's Proposed Discovery Plan**

The Plaintiff anticipate that discovery will be needed on the requisites of Fed. R. Civ. P. 23 in order to support his anticipated motion for class certification as well as the merits of Plaintiff's TCPA claims in order to prepare for trial, or to oppose any summary judgment motion that the Defendant may file. The Plaintiff will seek from the Defendant, or third parties retained on their behalf, (1) ESI regarding the calls placed in this case and any purported leads related thereto; (2) email and other communications related to telemarketing and any relationship with a

vendor who made calls for the Defendant; (3) ESI related to any purported consent to receive calls; (4) Defendant's policies and procedures concerning TCPA compliance; and (5) telemarketing complaints received by Defendant and their responses thereto. Plaintiff requests that the Court allow this narrowly tailored discovery to proceed in the normal course. In so doing, the Court should not bifurcate discovery at Defendant's request because it is "untenable and unfair" at this early stage. *Wilson v. Quest Diagnostics, Inc.*, 2019 U.S. Dist. LEXIS 224798, *9 (D. N.J. August 22, 2019) (denying virtually identical request to bifurcate in a TCPA case). District courts refuse to bifurcate discovery because it favors one party's case over another: "The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery." *Ibid.*

Indeed, the Court should reject Defendant's plan for two reasons. First, bifurcating discovery prejudices Plaintiff because he risks losing access to the evidence he needs to prove his case. TCPA cases are not often not only about the defendants' misconduct, but also their vendors, who act "vicariously" on the defendant's behalf, meaning Plaintiff will need discovery from Defendant and potentially third parties. Such evidence may be lost or destroyed, lost, corrupted, or forgotten if the Court delays discovery. *Lathrop v. Uber Techs., Inc.*, 2016 U.S. Dist. LEXIS 2490, at *12 (N.D. Cal. Jan. 8, 2016) (Plaintiff in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"); *See Briscoe v. Klaus*, 538 F.3d 252, 259 (3rd Cir. 2008) ("Generally, prejudice includes 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'"); *Hartley-Culp* 2014 U.S. Dist. LEXIS 130308 at *9 (denying similar request in another TCPA case after "find[ing] prejudice to

Plaintiff if discovery was bifurcated" in the same manner requested here); *Sanaah v. Howell*, 2009 U.S. Dist. LEXIS 35260, *2 (D. Colo. 2009) ("with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed."); *Saleh v. Crunch, LLC*, 2018 U.S. Dist. LEXIS 36764, at *5 (S.D. Fla. Feb. 28, 2018) (denying a stay in a TCPA case and noting that the "fading memory of any witness" is prejudicial).

Second, bifurcating discovery delays defeats efficiency and impedes judicial economy: "While the Court enjoys broad discretion in deciding whether to order bifurcation of discovery, because bifurcation of discovery risks additional delay, it has remained the exception and not the rule." *Marshall v. Grubhub Inc.*, No. 19 C 3718, 2022 WL 1055484, at *3 (N.D. Ill. Apr. 5, 2022) (internal citation and quotation omitted); *Koppelman v. Galt Ocean Manor Condo. Ass'n, Inc.*, No. 16-CV-62175, 2016 WL 6777896, at *1 (S.D. Fla. Nov. 16, 2016) ("when discovery is delayed or prolonged it can create case management problems which impede the [c]ourt's responsibility to expedite discovery and cause unnecessary litigation expenses and problems"); *See Young v. Peraza*, No. 1560968-CIV, 2015 WL 4639736, at *2 (S.D. Fla. Aug. 4, 2015).

In *Scoma Chriopractic, P.A. v. Jackson Hewitt Inc.*, the district court confronted the same request in a TCPA fax case. No. 2:17-CV-24-FTM-38CM, 2018 WL 1620899, at *2 (M.D. Fla. Apr. 4, 2018). There, the defendant denied sending the fax and claimed that even if it had, plaintiff requested the fax. *Id*. The defendant thus argued that bifurcating discovery on the plaintiff's "individual claim" would allow it to file for summary judgment on his claim and decide it before incurring "unnecessary discovery costs" on class wide discovery. *Id*. But the district court reject defendant's request. *Id*. Indeed, the court found that the defendant had not "clearly establish[ed] how merits discovery would aid its future motion for summary judgment

5

or [why] it [could not] bear the burden of class discovery…" holding that "[n]othing prevents [defendant] from moving for early summary judgment, even if discovery is not bifurcated. If [defendant] finds discovery objectionable or burdensome, [defendant] is at its liberty to object, but it is not exempt from broad discovery rules." *Id*. at *2.

So too here. Nothing prevents Defendant from moving for summary judgment at any stage during discovery's normal course. If Defendant believes in its defense, it can disclose its evidence to Plaintiff and move for summary judgment while still permitting Plaintiff his normal discovery rights to prove his case. As in *Scoma*, Defendant may object to discovery if it believes Plaintiff's requests are too "burdensome," but it should not be "exempt from broad discovery rules." Delaying discovery in the meantime would prevent the parties from exploring *all* merits issues for months, while the parties exchange discovery on narrow issues, brief Defendant's motion, and await the Court's decision. Defendant has not "clearly established" why that exception is necessary here. As a result, the Court should not bifurcate discovery.

**Defendant's Proposed Discovery Plan**

As highlighted above, Plaintiff apparently received one spoofed phone call that he has mistakenly attributed to Liberty. Again, Liberty has no record of that phone call, and does not even use the caller ID at issue as an outbound caller ID. It also does not engage any third parties to make calls like the one Plaintiff mistakenly assumes came from Liberty.

Liberty therefore proposes that discovery should proceed first on the merits of Plaintiff's individual TCPA claim (Phase I), followed by class-related issues in the event Plaintiff's individual claim survives a motion for summary judgment (Phase II). As outlined below, Plaintiff's individual claim against Liberty is subject to Plaintiff-specific dispositive issues that should be resolved in the first instance and not expose Liberty to expensive class discovery that

6

should ultimately prove unnecessary.

Plaintiff alleges that Liberty violated 47 U.S.C. § 227(b) of the TCPA, when Liberty (or some unidentified third party) allegedly made calls to Plaintiff's telephone number, without his prior consent, that used artificial or prerecorded voice. But Liberty did not make the alleged calls to Plaintiff, and has no records relating to Plaintiff or of ever calling Plaintiff. *See* Answer ¶¶ 16, Third Affirmative Defense. It does not authorize third parties to make such calls, so the vicarious liability possibility is equally speculative and unfounded. Based on Liberty's investigation, the only reasonable assumption is that the sole call at issue was "spoofed" by a third party.[1] Therefore, Liberty did not violate 47 U.S.C. § 227(b) on either a direct or vicarious basis. Thus, the parties should focus their discovery efforts on the narrow questions of whether Liberty made the alleged calls to Plaintiff.

Discovery should therefore proceed first on the merits of Plaintiff's individual TCPA claim (Phase I), including whether Liberty actually made the calls to the Plaintiff, whether the calls utilized artificial or prerecorded voice, and if Liberty had an agency relationship with the non-party caller(s), followed, if necessary, by class-related issues in the event Plaintiff's individual claim survives a motion for summary judgment (Phase II).

---

[1]  It is a commonplace American experience to receive spoofed calls from ne'er-do-well callers. Indeed, the FCC recently targeted a multi-national group responsible for over eight billion apparently illegal, spoofed robocalls. *See Public Notice: Robocall Enforcement Notice to All U.S.-Based Voice Service Providers*, DA/FCC No. DA-22-727 (July 7, 2022), https://www.fcc.gov/document/robocall-enforcement-notice-all-us-based-voice-service-providers (last visited July 14, 2022). Plaintiff received a single call from someone with a phone number that Liberty does not even use for outbound calls, making spoofing the only possible rational explanation for the call (again, Liberty had no record of Plaintiff's existence until this claim arose, and has no record whatsoever of ever calling him from *any* phone number, much less a toll-free number it only uses for specific types of inbound calls). This cannot be enough to subject both Liberty and other presumably innocent third parties from invasive, expensive discovery into four years' worth of actual calls of the type Plaintiff never even received.

All Phase 1 fact discovery shall be completed by January 17, 2023.

District Courts have broad discretion to control discovery in this fashion, which has been recognized by the First Circuit and this Court.[2] "Controlling the scope of discovery is particularly appropriate where discovery will impose considerable expense and the claims may be resolved on issues that require only limited or targeted discovery." *Osidi v. Assurance IQ, LLC*, Civil Action No. 21-cv-11320-ADB, 2022 U.S. Dist. LEXIS 37436, at *2-3 (D. Mass. Mar. 3, 2022) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).[3]

---

[2] *See Doe v. Solvay Pharms.*, 153 Fed. Appx. 1, 1 (1st Cir. 2005) ("The district court has broad discretion to control pre-trial discovery."); *see also Bucceri v. Cumberland Farms, Inc.*, Civil Action No. 15-cv-13955-IT, 2017 U.S. Dist. LEXIS 168331, at *3 (D. Mass. Oct. 4, 2017) (approving bifurcated discovery with phase I discovery involving the claims of 8 named or opt-out Plaintiffs, and Defendant's defenses of such claims); *Controlled Kinematics, Inc. v. Novanta Corp.*, Civil Action No. 17-cv-11029-ADB, 2019 U.S. Dist. LEXIS 116922, at *7 (D. Mass. July 15, 2019) ("District courts exercise broad discretion to manage discovery matters and to tailor discovery narrowly.") (internal quotations omitted); *Katz v. Liberty Power Corp.*, Civil Action No. 18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 30901, at *6 (D. Mass. Feb. 27, 2019) (bifurcating discovery in a TCPA case because defendant may have been able to demonstrate evidence that individual plaintiffs lacked viable claims); *Johnson v. Bd. Of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[D]istrict courts [have] broad discretion over the management of pre-trial activities, including discovery and scheduling." (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997) ("'district courts enjoy broad discretion in deciding how best to manage the cases before them'"))); *Katz v. Gokul RX LLC*, Case No. 8:19-cv-2210-T-35SPF, 2020 U.S. Dist. LEXIS 5957, at *3 (M.D. Fla. Jan. 14, 2020) (citing factors considered in bifurcating discovery including "evidence suggesting the claims of the named plaintiffs lack merit") (internal quotation omitted); *Loreaux v. ACB Receivables Mgmt.*, Civil Action No. 14-710 (MAS), 2015 U.S. Dist. LEXIS 112250, at *9 (D.N.J. Aug. 25, 2015) ("Under Rule 42(b) a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management. . . . Further, the broad discretion afforded courts in handling discovery disputes extends to decisions over bifurcating discovery.") (internal citations and quotations omitted).

[3] *Osidi*, 2022 U.S. Dist. LEXIS 37436, at *4-5 (granting bifurcated discovery in a TCPA case where the need for class discovery could be eliminated if defendant was able to demonstrate plaintiff lacked viable individual claims "where [d]efendant ha[d] raised [the] potentially dispositive issues" of whether plaintiff consented to the calls, whether the calls came from the phone number identified in the complaint, or whether a website's consent language was compliant with the TCPA, as "it would be prudent to test the merits of [p]lainitff's allegations before engaging in costly class discovery.") (internal quotations and citations omitted).

"Courts in this district have bifurcated individual merits and class discovery where doing so served the interests of justice given the allegations and circumstance of particular cases[,]" and where there are narrow, dispositive issues with the individual claims and discovery into those issues will not significantly overlap with class discovery. *Katz v. Liberty Power Corp., LLC*, Civil Action No. 18-cv-10506-ADB, 2019 U.S. Dist. LEXIS 30901, at *6 (D. Mass. Feb. 27, 2019); *see also* Scheduling Order, *Landy v. Sunpath Ltd.*, Civil Action No. 1:19-cv-12562-IT (D. Mass. Mar. 17, 2020), ECF No. 28 (this Court granting request to bifurcate discovery in putative class action TCPA case).[4]

Rule 1 of the Federal Rules of Civil Procedure codifies the objective of "just, speedy, and inexpensive determination of" cases, and courts in the First Circuit have recognized that the ideals of Rule 1 can be served through early discovery and dispositive motions on a plaintiff's individual

---

[4] *See also Liberty Power Corp.*, 2019 U.S. Dist. LEXIS 30901, at *6 (In TCPA cases, "class discovery is not necessary to address certain issues that may be dispositive of Plaintiff's individual claims or ability to bring the asserted class claims, including whether . . . named Plaintiffs' are within the classes they purport to represent"); *Cunningham v. Big Think Capital, Inc.*, 21-CV-02162 (DRH) (JMW), 2021 U.S. Dist. LEXIS 184642, at *5 (E.D.N.Y. Sep. 27, 2021) (good cause for bifurcation exists when "narrow, potentially dispositive issue[s], being totally distinct from class issues, ha[ve] the potential [to] render Plaintiff's TCPA claims baseless") (internal quotations and citations omitted); *Leschinsky v. Inter-Continental Hotels Corp.*, Case No. 8:15-cv-1470-T-30MAP, 2015 U.S. Dist. LEXIS 140535, at *4-5 (M.D. Fla. Oct. 15, 2015) (ordering bifurcation and finding "a bifurcated discovery process [argument is] well-taken[]" when "Defendants have presented evidence suggesting that [plaintiff's] TCPA claims are without merit as a matter of law"); *Akselrod v. Marketpro Homebuyers LLC*, Civil No. CCB-20-2966, 2021 U.S. Dist. LEXIS 5253, at *2, *7 (D. Md. Jan. 11, 2021) (granting bifurcated discovery in a TCPA case as defendant had raised the narrow, dispositive issues with the individual claims as to whether the system used to make the communications qualified as an automated dialing system and whether the communications qualified as telephone solicitations under the TCPA); *Loreaux*, 2015 U.S. Dist. LEXIS 112250, at *11 (granting bifurcated discovery to "promote the efficient resolution of this matter . . . with no significant prejudice to Plaintiffs."); *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, Civil Action No. 12-2132 (FLW), 2014 U.S. Dist. LEXIS 13523, at *11 (D.N.J. Feb. 4, 2014) (bifurcated discovery granted where the individual TCPA claims could be resolved on narrow, dispositive issues and the discovery as to those issues would not significantly overlap with class discovery).

claims prior to class discovery.[5] The inexpensive determination of cases is particularly relevant to class actions, as class actions have the potential "for hefty litigation expenses and an extensive use of judicial resources in the resolution of . . . claims[.]" *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Civ. No. 11-00011, 2013 U.S. Dist. LEXIS 23973, at *13 (D.N.J. Feb. 21, 2013).

Plaintiff is suing Liberty for alleged TCPA violations about calls Liberty did not make to Plaintiff. Liberty never called Plaintiff, and does not authorize anyone else to make calls promoting Liberty's educational offerings. *See* Answer ¶¶ 16, Third Affirmative Defense. The foregoing are narrow, dispositive issues regarding Plaintiff's individual claim. As such, the parties should defer engaging in wide-ranging discovery of four years of Liberty's calling practices and marketing activities, which are irrelevant to this case, and enduring the related substantial expenses, which will be overwhelmingly imposed on Liberty. Instead, the parties should first confine their discovery efforts to the merits (or lack thereof) of Plaintiff's individual claim, focusing on the discrete issues of whether Liberty made the calls at issue. In cases like this, courts have recognized the wisdom of sensibly phasing discovery to first investigate the merits of an individual, named plaintiff's claim before authorizing class-wide discovery.[6]

Plaintiff raises his concern that bifurcated discovery will affect his ability to seek discovery from third party vendors for whose actions Liberty, allegedly, may be vicariously liable. But that concern is misplaced here, as Liberty does not authorize anyone else to make calls promoting

---

[5] *See Bucceri*, 2017 U.S. Dist. LEXIS 168331, at *3; *see also Osidi*, 2022 U.S. Dist. LEXIS 37436, at *4-5; *Liberty Power Corp.*, 2019 U.S. Dist. LEXIS 30901, at *6.

[6] *See e.g., Liberty Power Corp.*, 2019 U.S. Dist. LEXIS 30901, at *6; *see also Leschinsky*, 2015 U.S. Dist. LEXIS 140535, at *4; *Loreaux*, 2015 U.S. Dist. LEXIS 112250, at *10-11 (bifurcating discovery in a TCPA case based on a lack of overlap between individual and class discovery, "therefore [there was] no real danger of a duplication of efforts or corresponding increase in litigation costs. Moreover, the Court finds that bifurcating the two issues has the potential to save the parties and the Court from the substantial costs and burdens associated with whole scale class action discovery.").

Liberty's educational offerings. *See* Answer ¶¶ 16, Third Affirmative Defense.  Therefore, there will be no need for discovery from third party vendors.

Second, Plaintiff also claims that bifurcation will be inefficient.  The opposite is true: allowing discovery into four years of actual calls Liberty makes when Plaintiff has never received *any* is grossly inefficient.  Plaintiff's cases are inapposite here.  For example, Plaintiff's reliance on *Scoma Chiropractic* here is misplaced, because there no one denied that Plaintiff received the fax at issue from *one* of the Defendants, but the defendant seeking to bifurcate thought it could establish that the Plaintiff had consented to receive the fax or that it was not responsible for the other defendants having sent the fax.  *See Scoma Chiropractic,* 2018 U.S. Dist. LEXIS 57378, at *3-4 ("Hewitt asserts the motion may resolve the entire case or streamline the proceedings because Plaintiff requested to receive a facsimile, and Defendants Astro Tax Services LLC and Naveen Mathur sent a facsimile to Plaintiff without Hewitt's approval or involvement.").  Here, however, Liberty is the only defendant, there is no evidence that Liberty actually called the Plaintiff, and Liberty does not engage third parties to make those types of calls.  Thus, this is a case of a single spoofed phone call, and four years of class discovery will be wholly unnecessary and irrelevant to establishing that isolated issue. *Scoma Chiropractic* is inapposite here.[7]

---

[7] That court has bifurcated cases where it made sense, as it does here. *See Leschinsky v. Inter-Continental Hotels Corp.*, Case No. 8:15-cv-1470-T-30MAP, 2015 U.S. Dist. LEXIS 140535, at *4-5 (M.D. Fla. Oct. 15, 2015) (ordering bifurcation and finding "a bifurcated discovery process [argument is] well-taken[]" when "Defendants have presented evidence suggesting that [plaintiff's] TCPA claims are without merit as a matter of law"); *see also Degutis v. Financial Freedom, LLC*, No. 2:12-cv-319-FtM-38DNF (SPC), 2013 WL 10207621, at *2 (M.D. Fla. Oct. 18, 2013) (granting defendants' motion to bifurcate discovery, which allowed for discovery of the named plaintiff's claims and staying class discovery until a ruling on a motion for summary judgment).  Plaintiff also cites *Wilson* and *Lathrop* to suggest that bifurcated discovery will be unfair and cause undue delay, but both cases are inapposite here. In *Wilson*, the defendant sought bifurcated discovery to focus on the issue of Plaintiff's consent, not on the grounds that the defendant did not make the call at issue, as is the case here. 2019 U.S. Dist. LEXIS 224798, *3. In *Lathrop*, the defendant sought to stay proceedings "in light of two pending appeals" in other cases,

There is no prejudice to Plaintiff for having to prove that he has a viable claim before forcing Liberty into exceptionally expensive class-wide discovery. Accordingly, discovery should be bifurcated to promote judicial efficiency in determining whether Plaintiff's individual claim is meritorious before allowing Plaintiff to conduct class discovery.

1. <u>Electronically Stored Information</u>

The Parties expect much discovery will be in electronic form and intend to stipulate or agree to the form or forms in which electronic discovery should be produced or otherwise made available. To the extent any issues regarding the format for electronic discovery arise, the Parties will confer in good faith before bringing them to the attention of the Court.

2. <u>Privilege and Preservation</u>

The Parties do not anticipate any unusual or unique privilege issues. The Parties agree to enter into a Confidentiality Order to govern the production of confidential information and disclosures. The Parties anticipate shortly submitting an order to that effect for the Court's review. The Parties have taken the appropriate steps to preserve discoverable information, including ESI.

3. <u>Limitations on Discovery</u>

The Parties do not anticipate any changes to the limitations set forth in the Rules.

4. <u>Additional Orders</u>

The Parties have agreed to service of discovery requests and responses via electronic mail, subject to the timing provisions of Fed. R. Civ. P. 6(d).

**D. Consent to Magistrate**

---

and the court denied the stay as it could not forecast "when the D.C. Circuit w[ould] ultimately issue a decision[,]" and the appeals were unlikely to be the final step as it was "almost certain [a party would] appeal to the Supreme Court." 2016 U.S. Dist. LEXIS 2490, at *2. Those concerns are clearly not at issue here.

The parties do not consent to proceeding before a magistrate judge.

## II. PROPOSED PRETRIAL SCHEDULE

The Plaintiff's proposed deadlines are:

| EVENT | Plaintiff's Proposal |
|---|---|
| Initial Disclosures | July 13, 2022 |
| Deadline to Amend Pleadings | September 20, 2022 |
| Fact Discovery Deadline | December 19, 2022 |
| Affirmative Expert Reports | January 18, 2023 |
| Rebuttal Expert Reports | February 17, 2023 |
| Expert Deposition Deadline | March 20, 2023 |
| Summary Judgment filing deadline | By April 18, 2023 |
| Class Certification filing deadline | By April 18, 2023 |
| Status Conference post MSJ and Class Certification | TBD |
| Trial | TBD |

The Defendant's proposed deadlines are:

| EVENT | Defendant's Proposal |
|---|---|
| Initial Disclosures | July 13, 2022 |
| Deadline to Amend Pleadings | September 20, 2022 |
| Phase I Discovery Deadline | January 17, 2023 |
| Affirmative Expert Reports | TBD |
| Rebuttal Expert Reports | TBD |
| Expert Deposition Deadline | TBD |
| Phase I Summary Judgment filing deadline | February 16, 2023 |
| Class Certification filing deadline | TBD |
| Status Conference post MSJ and Class Certification | TBD |
| Trial | TBD |

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff*

DEFENDANT LIBERTY UNIVERSITY, INC.

By counsel

/s/ Jillian E. Carson
Jillian E. Carson
Beck Reed Riden LLP
155 Federal Street, Suite 1302
Boston, Massachusetts 02110
Telephone: 617-500-8600
Facsimile: 617-500-8665
*jcarson@beckreed.com*


and

Joseph P. Bowser, *pro hac vice*
Carl Taylor Smith, *pro hac vice*
ROTH JACKSON
1519 Summit Avenue, Suite 102
Richmond, VA 23230
Telephone: 804-441-8701
Facsimile: 804-441-8438
jbowser@rothjackson.com
tsmith@rothjackson.com

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich